**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ALLEN R. WILLIAMS,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

No. C13-4025-MWB
CR10-4083-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

---

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION*.................................................................. 2
     *A.*    *Criminal Proceedings* .................................................. 2
     *B.*    *The Petitioner's § 2255 Motion* ................................... 4

*II.*   *LEGAL ANALYSIS* ........................................................... 6
     *A.*    *Motion To Amend* ....................................................... 6
     *B.*    *Standards For § 2255 Motion* ..................................... 9
     *C.*    *Procedural Matter* ................................................... 11
     *D.*    *Ineffective Assistance Of Counsel* ............................ 12
         *1.*    *Applicable standards* ....................................... 12
             *a.*    *Strickland's "deficient performance" prong* ............... 14
             *b.*    *Strickland's "prejudice" prong* ............................. 16
         *2.*    *Failure to object to motion to amend the superseding indictment* ................................................ 17
         *3.*    *Failure to request an informant instruction* ........... 18
         *4.*    *Failure to object to Williams's absence during the jury's replaying of recordings* .......................... 19
         *5.*    *Failure to object to the presence of the court's "IT" person to go to the jury room without Williams being present* ...................................................... 22
         *6.*    *Failure to object to the court allowing "unplayed" video and audio tapes to go to the jury room* ........ 23

  E.  *Certificate of Appealability* ..................................................... **23**

**III.** **CONCLUSION** ................................................................... **24**

## I.  INTRODUCTION

  This case is before me on petitioner Allen R. Williams's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Williams claims that his trial counsel provided him with ineffective assistance in a number of ways. The respondent denies that Williams is entitled to relief on his claims.

### A.  Criminal Proceedings

  On August 19, 2010, an indictment was returned against Williams, and six codefendants, charging him with conspiracy to distribute 28 grams or more of crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (Count 1), distributing crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Counts 2, 7, and 8), and distributing and aiding and abetting another in the distribution of crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 18 U.S.C. § 2 (Count 3).

  On December 14, 2010, a superseding indictment was returned against Williams, and five codefendants, charging him with conspiracy to distribute 50 grams or more of

crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1), distributing crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Counts 2, 7, and 8), and distributing and aiding and abetting another in the distribution of crack cocaine, having previously been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 18 U.S.C. § 2 (Count 3).[1]  On January 28, 2011, the prosecution moved to amend the superseding indictment to cure clerical errors in the conspiracy charge in Count 1.  The prosecution's motion was unresisted by Williams and the three codefendants remaining in the case.  That same day, the prosecution's motion was granted and Count 1 was amended to change the time frame of the alleged conspiracy to read "from about January 2010, and continuing through about August 2010," to change the quantity of drugs alleged to read "28 grams or more," and to change the related code section to read "21 U.S.C. § 841(b)(1)(B)."

Trial in this case commenced on February 9, 2011, with Williams being tried with codefendant Robert McNairy.  On February 9, 2011, after all of the evidence had been submitted to the jury for deliberation, the jury sent a note to me at the end of the day requesting to replay recordings of admitted evidence the following day.  I telephoned the attorneys regarding the note and had a preliminary discussion with them on their positions.  The prosecution and McNairy's counsel agreed to permit the jury to replay the recordings while Williams's counsel objected to the replaying of recordings.  No decision was made at that time.  Instead, I scheduled a hearing on the issue for the

---

[1]Lloyd Williams, a codefendant named in the original indictment, pleaded guilty to charges in the original indictment and was not named in the superseding indictment. The superseding indictment included one additional count of possession of crack cocaine with intent to distribute, but Williams was not charged in that count.

following morning. At that hearing, on the morning of February 10, 2011, both Williams and his counsel were present. Williams's counsel objected to the jury being allowed to replay the audio and video recordings while the prosecution was in favor of permitting it. I ordered that a laptop computer be provided to the jury to allow the jurors to replay the recordings during their deliberations.

On February 10, 2011, the jury returned a verdict finding Williams guilty of the charged offenses. On May 20, 2011, Williams's counsel filed a motion for downward variance. The prosecution, in turn, filed a motion for upward departure on the ground that Williams's criminal history category substantially under represented the seriousness of Williams's criminal history. Williams appeared before me on May 27, 2011, for sentencing. I found that Williams qualified as a career offender based on his two prior felony drug trafficking convictions and that his total offense level was 37 with a criminal history category of VI for an advisory United States Sentencing Guideline range of 360 months to life. I denied both the prosecution's motion for upward departure and Williams's motion for downward variance. I sentenced Williams to 360 months imprisonment on each count with the sentences to run concurrent, and 8 years of supervised release on Count 1 and six years on the other counts, all to run concurrent. Williams appealed his conviction. On appeal, Williams contended there was insufficient evidence to sustain the jury's verdict. On March 5, 2012, the Eighth Circuit Court of Appeals denied Williams's appeal. *See United States v. Williams*, 456 Fed. App'x (8th Cir. 2012).

### B.     *The Petitioner's § 2255 Motion*

On March 1, 2013, Williams filed a *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. In his motion, Williams contends that his counsel provided him with ineffective assistance in failing:

4

(1) to object to the prosecution's motion to amend the superseding indictment; (2) to request an informant instruction; (3) to object to his absence during the replaying of audio and video evidence by the jury; (4) to object to my allowing the court's "IT" personnel to go into the jury room without Williams being present; (5) for allowing video and audio tapes to go into the jury room; (6) to seek to strike surplusage language from the superseding indictment; (7) to object to a jury instruction that constructively amended the superseding indictment; (8) to object to co-conspirator hearsay testimony; (9) to object to portions of my statement of the case concerning Counts 5 and 6; (10) to have laboratory receipts removed from the laboratory results prior to that evidence being given to the jury; (11) to argue claims on appeal; (12) to advise Williams of his rights to speedy trial; and (13) to address the crack/powder cocaine difference.

After respondent filed its answer, I set a briefing schedule and counsel was appointed to represent Williams on his § 2255 motion. In his brief, Williams addresses the merits of only his third and fourth claims. Williams, however, also requests I review and rule on his first, second, and fifth claims. Williams does not address his other eight claims nor does he request that I review them. I consider these eight additional claims of ineffective assistance of counsel waived. Respondent resists each of the grounds that Williams still seeks relief on. Williams, in turn, filed a timely reply brief.

On February 21, 2014, after the case was fully submitted, Williams moved *pro se* to amend his § 2255 motion in order to raise two additional claims of ineffective assistance of counsel: (1) counsel's failure to object to the case agent sitting at the prosecution table during trial, and (2) counsel's failure to file motions to dismiss the indictment and superseding indictment because the drug quantity was not alleged in

Counts 2, 3, 7, and 8.[2] Respondent resists Williams's motion for leave to amend, arguing that the amended claims are untimely. In response, Williams filed an untimely reply brief without leave to do so. I will take up Williams's motion to amend before addressing the merits of his § 2255 motion.

## II. LEGAL ANALYSIS

### A. Motion To Amend

Section 2255 proceedings are civil in nature and, therefore, governed by the Federal Rules of Civil Procedure, *see, e.g., Mandacina v. United States*, 328 F.3d 995, 1000 & n.3 (8th Cir. 2003), including Rule 15 regarding amendments. I have previously stated that "the timeliness, or lack thereof, of [a § 2255 petitioner's amended claims] is interdependent upon the starting date for the one-year limitation." *United States v. Ruiz–Ahumada*, No. CR02-4054-MWB, 2006 WL 3050807, *2 (N.D. Iowa Oct. 24, 2006); *see also Johnson v. United States*, 860 F. Supp. 2d 663, 711 (N.D. Iowa 2012). Respondent asserts, and Williams does not dispute, that the starting date for the one-year statute of limitations for his § 2255 motion was June 3, 2012, when his time to seek review in the United States Supreme Court expired, and that the statute of limitations expired on June 3, 2013. While Williams's original § 2255 motion, filed on March 1, 2013, was filed within this one-year limitations period, his proposed amendment to his § 2255 motion was not.

I have previously noted that "courts, including the Eighth Circuit Court of Appeals, have recognized that amendments pursuant to Rules 15(a) or 15(b) in § 2255 cases, offered after the expiration of the § 2255 statute of limitations, are still subject to

---

[2]After the case was fully briefed, Williams's counsel was permitted to withdraw because he had accepted employment with a corporation and would no longer be engaged in private practice.

the 'relation back' requirements of Rule 15(c)." *Johnson*, 860 F. Supp. 2d at 711. More specifically, I have previously observed that "'an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.'" *Ruiz–Ahumada*, 2006 WL 3050807 at *2 (emphasis added) (quoting *United States v. Espinoza–Saenz*, 235 F.3d 501, 505 (10th Cir. 2000)). Thus, Williams's proposed amendment to his § 2255 motion is only timely if the "new" claims asserted in it "relate back" to the filing of Williams's original § 2255 motion. *Id.*; FED. R. CIV. P. 15(c).

The Eighth Circuit Court of Appeals has explained the requirements for "relation back," as follows:

> Claims made in an amended motion relate back to the original motion when the amendment asserts a claim that arose out of the same "conduct, transaction, or occurrence set out . . . in the original" motion. Fed. R. Civ. P. 15(c)(1)(B). To arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 162 L.Ed.2d 582 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition). An amended motion may raise new legal theories only if the new claims relate back to the original motion by "aris[ing] out of the same set of facts as [the] original claims." *Mandacina*, 328 F.3d at 1000. The facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim. *See [United States v.] Hernandez*, 436 F.3d [851,] 858 [(8th Cir.), *cert. denied*, 547 U.S. 1172 (2006)] (explaining the rationale for Rule 15(c)). Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir.2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of

ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), *cert. denied*, 547 U.S. 1217, 126 S.Ct. 2906, 165 L.Ed.2d 936 (2006). The allegations of ineffective assistance "must be of the same 'time and type' as those in the original motion, such that they arise from the same core set of operative facts." *Hernandez*, 436 F.3d at 857 (quoting *Mayle*, 545 U.S. at 650, 657, 660, 125 S.Ct. 2562 and holding that ineffective assistance claim alleging that counsel inadequately cross-examined two witnesses did not relate back to a claim for ineffective assistance related to counsel's failure to object to the admission of evidence lacking a proper foundation); *see also Mandacina*, 328 F.3d at 1002 (concluding that counsel's alleged failure to investigate the police report of an interview naming potential suspects was not a similar type of error as allegedly failing to discover exculpatory footprints during counsel's investigation of the case); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999) (failure to file an appeal is not the same type of error as failure to seek a downward departure or challenge the drug type at sentencing).

*Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010); *see also Johnson*, 860 F. Supp. 2d at 713-14 (quoting this passage from *Dodd*).

The "new" "ineffective assistance" claims in Williams's proposed amendment to his § 2255 motion plainly do *not* "relate back" to the claims in his § 2255 motion under this standard, because there is no "common core" of facts between the "new" and "old" claims. *Dodd*, F.3d at 515. It is not enough that Williams originally asserted "ineffective assistance" claims, and that the "new" claims are also "ineffective assistance" claims. *Id*. Williams's "new" allegations of ineffective assistance are not "of the same 'time and type' as those in the original motion." *Id*. (internal quotation marks and citations omitted). None of Williams's original claims or the limited facts alleged in support of

them hint at the factual basis for Williams's new proposed claims of ineffective assistance of counsel. Consequently, Williams's motion to amend is denied.[3]

### B. Standards For § 2255 Motion

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339

---

[3]Even if I did permit Williams to amend his § 2255 motion to assert these two additional claims of ineffective assistance of counsel, neither claim warrants relief. First, federal courts have repeatedly recognized that a case agent for the United States may be present throughout a trial under Federal Rule of Evidence 615(2) and sit at counsel table. *See United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012); *United States v. Riddle*, 193 F.3d 995, 997 (8th Cir. 1999); *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992); *see also United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012); *United States v. Casas*, 356 F.3d 104, 126 (1st Cir. 2004). Williams's second proposed claim fares no better. "Section § 841(b)(1)(C) contains no threshold drug-quantity requirement and, therefore, it was not error to indict him for possessing 'a detectable amount' but omit mention of the specific quantity." *United States v. Gillespie*, 436 F.3d 272, 276 (D.C. Cir. 2006).

F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below.

*Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Williams's claims for § 2255 relief.


## C.    *Procedural Matter*

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "grant a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919

(8th Cir. 2001) (emphasis in original). Where a motion raises no disputed questions of fact, however, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the motion and the record conclusively show that Williams is entitled to no relief.

### D.   Ineffective Assistance Of Counsel

#### 1.   Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation .

. . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of both prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[4]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Williams's claims.

### a. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland,* 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must

---

[4] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting Strickland, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at –––– , 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-

guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing Bell v. Cone, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).  Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b.     Strickland's "prejudice" prong

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694).  The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

16

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### 2. *Failure to object to motion to amend the superseding indictment*

Williams alleges that his counsel provided ineffective assistance by failing to object to the prosecution's motion to amend the superseding indictment. Respondent argues that Williams's counsel's actions were not deficient and did not prejudice Williams. I agree.

On January 28, 2011, the prosecution moved to amend the superseding indictment to cure clerical errors in the conspiracy charge in Count 1 of the Superseding Indictment. Specifically, the prosecution sought to change the time frame of the alleged conspiracy to read "from about January 2010, and continuing through about August 2010," to change the quantity of drugs alleged to read "28 grams or more," and to change the related code section to read "21 U.S.C. § 841(b)(1)(B)." These were the same terms found in the original indictment. Williams's counsel discussed the prosecution's motion with Williams and explained the proposed changes to the superseding indictment that the prosecution sought in its motion. It was Williams's counsel's professional opinion that Williams would not be prejudiced by correcting the clerical errors and that resubmitting the case to the grand jury could possibly delay the trial, which Williams did not want. I conclude that Williams's counsel's actions were not deficient. Moreover, even if I assume, arguendo, that Williams's counsel's actions were deficient, Williams has not established that he was prejudiced. The amendment to Count 1 merely corrected clerical errors. Even if Williams's counsel had successfully opposed the prosecution's motion, the prosecution would have been free to seek a second superseding indictment to restore Count 1 to the same terms found in the original indictment. Additionally, the amendment lowered the alleged drug quantity from 50 grams to 28 grams, as set out in the original indictment, and changed the related code section to § 841(b)(1)(B). Thus, the amendment

lowered the mandatory minimum sentence Williams faced from 10 years imprisonment to five years imprisonment. In sum, Williams has failed to satisfy both the deficient performance prong and prejudice prong of *Strickland* and this claim is denied.

### 3. *Failure to request an informant instruction*

Williams also alleges that his counsel was ineffective in failing to request an "informant" jury instruction. The respondent responds that my final jury instructions included an instruction regarding cooperating witnesses. The respondent is correct. My Final Instruction No. 10, concerning testimony of witnesses, provided in relevant part:

> You must consider the testimony of the following witnesses with greater caution and care:
>
> - A witness testifying pursuant to a plea agreement.
>
>   - You may give this testimony as much weight as you think it deserves
>
>   - Whether or not the witness's testimony has been influenced by the plea agreement is for you to decide
>
>   - The plea agreement may be a "cooperation" plea agreement that provides that the prosecution may recommend a less severe sentence if the prosecutor believes that the witness has provided "substantial assistance"
>
>   - The court cannot reduce a sentence for "substantial assistance" unless the prosecution asks the court to do so, but if the prosecution does ask, the court decides if and how much to reduce the witness's sentence
>
> - A witness testifying about participation in a charged crime.
>
>   - You may give this testimony as much weight as you think it deserves

- Whether or not the witness's testimony has been influenced by the witness's desire to please the prosecutor or to strike a good bargain is for you to decide

It is your exclusive right to give any witness's testimony whatever weight you think it deserves.

Final Jury Instruction No. 10. Because this instruction incorporates the essence of the "informant" instruction Williams believes should have been requested by his counsel, such a request would have been totally superfluous. Williams has failed to satisfy both prongs of the *Strickland* test on this claim and it is denied.

### 4. Failure to object to Williams's absence during the jury's replaying of recordings

Williams further claims that his trial counsel provided ineffective assistance of counsel by failing to object to Williams's absence when the jury replayed audio and video recordings during their deliberations. Williams argues that the replaying of the audio and video recordings outside of his presence violated his Fifth Amendment right to be present for critical stages of trial and Federal Rule of Criminal Procedure 43.

A defendant has a fundamental right to be present at all critical stages of trial. *See Rushen v. Spain*, 463 U.S. 114, 117 (1983); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."). "'A criminal defendant's right to be present at every stage of a criminal trial is rooted, to a large extent, in the Confrontation Clause of the Sixth Amendment and is protected to some extent by the Due Process Clause of the Fifth and Fourteenth Amendments.'" *United States v. Picardi*, 739 F.3d 1118, 1123 (8th Cir. 2014) (quoting *United States v. Smith*, 230 F.3d 300, 309 (7th Cir. 2000) (internal citation

omitted)). Williams bases his argument on Ninth Circuit case law holding that "a defendant has a right to be present when tape-recorded conversations are replayed to a jury during its deliberations." *United States v. Félix–Rodríguez*, 22 F.3d 964, 967 (9th Cir. 1994). However, there is a circuit split on this issue. In *United States v. Holton*, 116 F.3d 1536 (D.C. Cir. 1997), the District of Columbia Circuit Court of Appeals rejected defendants' constitutional arguments that the trial court erred in allowing the jury to listen to the replaying of taped evidence during jury deliberations. *Id*. at 1546. In so ruling, the court relied upon its own prior decision in *United States v. Sobamowo*, 892 F.2d 90 (D.C. Cir. 1989). In *Sobamowo*, Justice, then Judge, Ruth Bader Ginsburg concluded that "the tape replaying [for the jury during deliberations is] not a stage of trial implicating the confrontation clause or Rule 43(a)." *Id*. at 96 (citing *Dallago v. United States*, 427 F.2d 546, 552–53 (D.C. Cir. 1969) (holding that defendant's presence is not required when exhibits are submitted to the jury during deliberations)). The Tenth Circuit Court of Appeals also relied upon the *Sobamowo* decision in *Valdez v. Gunter*, 988 F.2d 91, 94 (10th Cir. 1993). In *Valdez*, the court held that defendant's due process rights were not violated when part of audiotape admitted in evidence was replayed for jury during their deliberations without defendant being present, noting that "[t]he only evidence the jury actually was allowed to consider was the part of the tape it had already heard during the trial when petitioner was present." *Id*. Most recently, the First Circuit Court of Appeals weighed in on the issue in *United States v. Monserrate-Valentin*, 729 F.3d 31 (1st Cir. 2013). In *Monserrate-Valentin*, after reviewing the decisions of both the Ninth Circuit Court of Appeals and the District of Columbia Circuit Court of Appeals, the First Circuit Court of Appeals held that the replaying of recordings to the jury outside of the defendants' presence did not violate the Confrontation or Due Process Clauses or Rule 43, given the procedural safeguards employed by the district court. *Id*. at 59. The court observed:

We fail to see how these types of recordings are any different from the other types of documentary evidence that are routinely reviewed by jurors during their deliberations. *See Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969) ("The jurors, at some time prior to verdict, are entitled to examine the documents admitted in evidence, and their examination in the jury room during deliberations is a matter within the sound discretion of the trial court."). In fact, trial courts around the country often provide juries with admitted tape recordings and transcripts before they begin deliberating. *See, e.g., United States v. Walker*, 205 F.3d 1327 (2d Cir. 2000) ("This court has long held that a jury's review during its deliberations of a trial transcript is not a stage of the trial requiring the defendant's presence and that physical evidence, such as a tape, is routinely sent into the jury room for inspection by jurors outside the presence of the court.") (internal citations and quotation marks omitted) (unpublished); *United States v. Hofer*, 995 F.2d 746, 748 (7th Cir.1993) (reviewing district court's decision to allow exhibits into the jury room for abuse of discretion and noting that said discretion is "not limited when the exhibits are audio tape recordings"). Therefore, appellants have failed to persuade us that a mere playback to the jury of an admitted recording is a stage of the trial implicating a defendant's rights under the Confrontation Clause.

*Id*.

Williams has not cited any binding authority, and I am unaware of any decision by the Eighth Circuit Court of Appeals, holding that replay of audio or video evidence to a jury during its deliberations is a critical stage of the trial triggering a criminal defendant's fundamental right to be present. The Eighth Circuit Court of Appeals, however, has repeatedly held that "[t]he trial court has 'considerable discretion' to send exhibits to the jury during its deliberation, and the court's determination will not be reversed on appeal unless it has abused its discretion." *United States v. Placensia*, 352 F.3d 1157, 1165 (8th Cir. 2003) (quoting *United States v. Williams*, 87 F.3d 249, 255

(8th Cir. 1996) (quotation marks omitted)); *see United States v. Venerable*, 807 F.2d 745, 747 (8th Cir. 1986); *United States v. Robinson*, 774 F.2d 261, 275 (8th Cir. 1985). Because a constitutional right to presence at a replay of audio or video evidence by the jury is not clearly established, Williams's counsel was not deficient by failing to object to Williams's absence when the jury replayed audio and video recordings during their deliberations. Thus, this claim is also denied.

5. ***Failure to object to the presence of the court's "IT" person to go to the jury room without Williams being present***

Williams makes a closely related claim that his counsel was ineffective in failing to object to the presence of the court's "IT" person being permitted to go to the jury room without him being present. Williams's counsel did not object to my permitting the court's own computer technician to go to the jury room to explain how to operate the laptop computer for several reasons. First, Williams's counsel was aware that I had given the computer technician clear and concise instructions to spend as little time as possible in the jury room and was to only instruct the jury on how to run the laptop. Second, the computer technician had no knowledge of the case and had not participated in the trial. Third, Williams's counsel was also aware the computer technician was not associated with law enforcement, and, in Williams's counsel's opinion, would not in any way influence the jury. Given these circumstances, Williams's counsel was not deficient by failing to object to Williams's absence when the court's computer technician went to the jury room.

Williams has also not established that he was prejudiced by his counsel's failure to object. On April 5, 2011, Williams's counsel interviewed the court's computer technician regarding what occurred when he assisted the jury. Williams's counsel was told that the computer technician set up a stripped down laptop computer outside of the jury's presence. He then notified the jury and they picked one juror to run the laptop.

That juror came in for instruction. The computer technician made sure the video came up on the computer and then left the room without watching the video. The computer technician estimated that he spent less than one minute in the juror's presence. Williams does not dispute that the computer technician never discussed Williams's case with any member of the jury. Accordingly, Williams has failed to satisfy both prongs of the *Strickland* test on this claim and it is denied.

### 6. Failure to object to the court allowing "unplayed" video and audio tapes to go to the jury room

Williams claims that certain tapes that were not played in open court were permitted to be sent to the jury room for viewing without objection. Specifically, he contends that exhibits 1C and 1E were sent to the jury room. This allegation is without any factual support in the record. The court's witness and exhibit list does not list exhibits 1C and 1E as being admitted into evidence. *See* Witness & Exhibit List at 1-2 (docket no. 256 in CR10-4083). Only admitted evidence was sent to the jury. Nothing in the trial record even remotely supports Williams's claim that non-admitted evidence was provided to the jury. Williams's trial counsel declares in his affidavit that he is unaware of any non-admitted video or audio tapes being given to the jury. Because Williams has failed to establish an underlying factual basis for this claim, it is also denied.

### E. Certificate of Appealability

Williams must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that

issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Williams's motion does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Williams's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Williams wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## III.    CONCLUSION

For the reasons discussed above, Williams's Motion under 28 U.S.C. § 2255 is denied in its entirety. This case is dismissed. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 13th day of August, 2014.

*Mark W. Bennett*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA